**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

WILLIAM MARK BONNEY, Chapter 13 )
Trustee; and SHERRY GIBSON, )
f/k/a Sherry Wynne, )
                                    )
       Plaintiffs, )
                                    )
v.                                  )    Case No. CIV-07-422-KEW
                                    )
LAWRENCE W. PARISH; and )
JEREMY T. PITTMAN, individually )
and d/b/a Tolle & Parish, )
                                    )
       Defendants. )

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed January 22, 2008 (Docket Entry #19). Timely responsive briefs were filed. Additionally, Plaintiffs supplemented their response to which Defendants replied. Thus, the matter is at issue and ripe for ruling.

Plaintiffs initiated this action on December 6, 2007. They assert the following allegations: On March 23, 2001, Gypsum Enterprises, Inc. ("Gypsum") filed a foreclosure action in Okfuskee County, Oklahoma against Plaintiff Sherry Gibson ("Gibson"). Gypsum alleged that Gibson defaulted on a promissory note in the amount of $70,000 secured by a Deed of Trust which constituted a mortgage on Gibson's homestead.

On June 4, 2001, Gibson employed Defendant Lawrence W. Parish ("Parish") to defend her in the foreclosure case. On June 6, 2001, Parish entered an appearance in the case. Until October 26, 2002, Gibson dealt solely with Parish or the Tolle & Parish staff.

Thereafter, Gibson did not see Parish until trial, but dealt with Defendant Jeremy T. Pittman ("Pittman") and the Tolle & Parish staff.

On June 12, 2003, Judge Rahal commenced a non-jury trial of the action. Both Pittman and Parish appeared with Gibson at the trial. At the conclusion of the trial, the court entered judgment for Gypsum against Gibson, foreclosing the mortgage and awarding attorney fees and costs.

On August 1, 2003, Pittman filed an appeal of the judgment. On October 7, 2003, special execution issued as Gibson was unable to post the necessary bond. On December 1, 2003, Gibson filed Chapter 13, bankruptcy in the Eastern District of Oklahoma and notice of the automatic stay was filed in the foreclosure case on December 4, 2003.

On December 15, 2003, Gypsum filed a creditor's claim in the bankruptcy case for the foreclosure judgment in the amount of $111,599.57. In accordance with the bankruptcy payment plan, Gibson was ordered to pay Gypsum a total approximate amount of $83,599.00 in periodic payments to satisfy the judgment.

On January 14, 2004, Gibson amended her Schedule B - Personal Property in her bankruptcy case to include a "Potential Legal Malpractice claim" valued at $60,000.00.

On January 28, 2004, Pittman, d/b/a Tolle & Parish, filed a claim against Gibson in the bankruptcy case in the amount of $11,762.19 for unpaid attorney fees incurred in the foreclosure case. Pittman attempted to withdraw from representing Gibson in

her appeal but reconsidered and continued to represent her until he withdrew sometime after the filing of the reply brief on May 3, 2004.

On July 12, 2005, the Court of Appeals affirmed the foreclosure judgment.

Gibson retained new counsel who filed a petition for rehearing, which was denied. He then filed a petition for certiorari on September 22, 2005, which was denied on November 14, 2005. Mandate issued December 7, 2005 and was spread of record on December 12, 2005.

Gibson paid Tolle & Parish's claim in full. Gibson previously paid Defendants approximately $5,000.00 in attorney's fees.

Gibson's claims consist of (1) an objection to Defendants' claim in the Chapter 13 bankruptcy case based upon their failure to perform the services for which Gibson contracted and because the claim was not supported by valuable consideration; (2) breach of contract, alleging Defendants failed to investigate, failed to conduct discovery, failed to subpoena witnesses, and failed to prepare and develop the case for trial, all services for which Gibson allegedly contracted; and (3) negligence, based upon the alleged failure to exercise ordinary care, diligence, and judgment in the performances of legal services because Defendants did not possess the degree of knowledge and ability possessed by other Oklahoma attorneys. Gibson also sought punitive damages.

Plaintiff William Mark Bonney ("Bonney") appears in this action in his capacity as a Chapter 13 bankruptcy trustee. In the

event Gibson prevails in this action, Bonney seeks the return of the $11,762.19 paid to Defendants for legal services rendered as provided by the Chapter 13 plan.

Through the pending Motion, Defendants contend this action should be dismissed in accordance with Fed. R. Civ. P. 12(b)(6) in its entirety because (1) Plaintiffs' claims are barred by the applicable statute of limitations; and (2) under the doctrines of claim and/or issue preclusion, equitable estoppel and/or waiver, no objection to Defendants' claim filed in Gibson's bankruptcy case was filed by either Plaintiff and, in fact, the claim was paid in full in accordance with Gibson's confirmed Chapter 13 plan.

Prior to the Supreme Court's recent decision in <u>Bell Atlantic Corp. v. Twombly</u>, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), dismissal under Fed. R. Civ. P. 12(b)(6) was appropriate only when it appeared the plaintiff could prove no set of facts in support of the claims that would entitle him to relief. <u>Coosewoon v. Meridian Oil Co.</u>, 25 F.3d 920, 924 (10th Cir.1994). In <u>Bell Atlantic</u>, the Supreme Court articulated a new "plausibility" standard under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic</u>, 127 S.Ct. at 194; see also, <u>Alvarado v. KOB-TV, LLC</u>, 493 F.3d 1210, 1215 (10th Cir. 2007) ("We look for plausibility in th[e] complaint."). Under either standard, all well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. <u>Alvarado</u>, 493 F.3d at 1215. However, the new plausibility standard did not alter the

fact that any claim which is barred by the applicable statute of limitations based upon the facts stated on the face of the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

This Court first addresses whether the Motion should be converted to one under Fed. R. Civ. P. 56(a). In seeking relief under Fed. R. Civ. P. 12(b)(6), Defendants rely upon the information stated on the face of Plaintiffs' Complaint as well as some information contained in the bankruptcy schedules filed by Gibson. Certainly, reliance upon the information stated by Plaintiffs in the Complaint is appropriate. Fed. R. Civ. P. 12(d). Additionally, judicial notice of a state court file for consideration of a motion to dismiss has been considered appropriate without conversion to a motion for summary judgment. Pace v. Swerdlow, 519 F.3d 1067, 1072-73 (10th Cir. 2008). It follows, then, that reliance upon a bankruptcy court file which is deemed a filing of this Court is equally appropriate. Moreover, this Court notes that Plaintiffs have not urged conversion. Therefore, the Motion will be considered on the information provided from these sources.

As an initial matter, this Court acknowledges Plaintiffs' abandonment of their claim against Defendants based upon breach of contract. Plaintiffs conceded in their response that Gibson's "breach of contract is not pleased (sic) with sufficient specificity, and therefore withdraws that theory of recovery at this time without prejudice to seeking leave to amend her Complaint at (sic) to include it at the conclusion of discovery." Pl. Resp.

5

at p. 20.

The sole avenue for recovery remaining for Plaintiffs is one based in the state law tort of legal malpractice. In Oklahoma, a legal malpractice claim, though based in a contract for employment, is founded in tort law and is governed by a two year statute of limitations period. Okla. Stat. tit. 12 § 95(A)(3); <u>Funnell v. Jones</u>, 737 P.2d 105, 107 (Okla. 1985). The parties do not appear to be in disagreement on this point of law. However, the point in time from which the statute of limitations is considered to begin is disputed.

Defendants offer multiple alternatives for the commencement of this action - neither of which would render this action timely. The first date Defendants proffer is January 14, 2006, two years after the date Gibson first listed a potential legal malpractice claim in her amended Schedule B in her bankruptcy case. Defendants also suggest the required commencement date for this action might be August 23, 2007, a date two years after the filing of an entry of appearance in the foreclosure action by alternative counsel. Neither of these methods of calculation reflect the current state of Oklahoma law on this issue.

The third alternative proposed by Defendants does bear fruit. Defendants also suggest the action should have been brought within two years after the denial of Gibson's petition for writ of certiorari before the Supreme Court of Oklahoma. The seminal case on this issue cited by both parties is <u>Stephens v. General Motors Corp.</u>, 905 P.2d 797 (Okla. 1995).

6

In Stephens, the Oklahoma Supreme Court determined the accrual date for a legal malpractice claim occurs upon the conclusion of the appeal of the order from which the challenged representation arose. Specifically, the Court reasoned

> According to 12 O.S.Supp.1993, § 95, an action must be commenced within the relevant period "after the cause of action shall have accrued" or it is barred. The statute of limitations begins to run when the cause of action accrues. A cause of action accrues when a litigant could first maintain an action to a successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman,* 632 P.2d 368, 370 (Okl.1980); *Oklahoma Brick Corp. v. McCall,* 497 P.2d 215, 217 (Okl.1972). Additionally, this court has held "that for the purposes of 12 O.S.1981, § 95 Third, a negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative." *M.B.A. Constr., Inc. v. Roy J. Hannaford Co., Inc.,* 818 P.2d 469, 470 (Okl.1991).
>
> Thus, the dispositive question in the instant matter is whether Appellant's malpractice action accrued at the time the trial court dismissed the underlying action, starting the statute of limitation period, or whether the statute of limitations was tolled until after the case was finally determined adversely to Appellant on appeal. We find the statute of limitations did not begin to run until the appeal was decided in the underlying case.

Stephens, 905 P.2d at 799.

The date the appeal is decided is also disputed between the parties. Plaintiffs contend the appeal is concluded when the "mandate was spread of record on December 12, 2005." Pl. Resp. p. 6. This Court finds no support for this proposition in either the controlling case authority or in any statute. An operative date, however, might be that of the issuance of the mandate. For their

part, Defendants urge the appropriate date is when the petition for certiorari is denied – also a viable alternative. For the resolution of this question, this Court need look no further than Stephens.

The Oklahoma Supreme Court found "[a] cause of action accrues when a litigant can first maintain an action to a successful conclusion. The injury to plaintiff, for which an action could proceed, must be certain and not merely speculative." Id. at 800. Ultimately, the Court found the malpractice action accrued when the petition for rehearing was denied and, therefore, the statute of limitations began running from that date. Id.

In this case, the Oklahoma Supreme Court denied the writ of certiorari filed by Gibson's newly retained counsel on November 14, 2005. As a result, Plaintiffs were required to commence this action by November 14, 2007, which they did not. It is, therefore, time-barred.

The date for the issuance of a mandate suggested by Plaintiffs is not a magical edict. Rather, the issuance is merely a ministerial act accomplished by the Clerk of the Supreme Court of Oklahoma at the direction of the Court which represents a directive to the lower court as to the ruling of the appellate court and provides authority for that lower court to proceed. Daniel v. Daniel, 42 P.3d 863, 867-68 (Okla. 2001). Indeed, after the denial

of a writ for certiorari, no petition for rehearing may be filed in the Oklahoma Supreme Court. Okla. S. Ct. R. 1.181. Therefore, the matter has achieved sufficient finality to eliminate the speculative nature of Plaintiffs' legal malpractice claim. Consequently, Plaintiffs' legal malpractice claim is time-barred.

In the supplemental briefing, Plaintiffs contend the legal malpractice claim brought in this action is tantamount to a compulsory counterclaim to Defendants' proof of claim because they arise from the same transactions or occurrences upon which Defendants base their claim filed in the bankruptcy case. In that event, Defendants argue that the statute of limitations does not bar the counterclaim in accordance with Oklahoma law found at Okla. Stat. tit. 12 § 2013(C).

This statute, which differs from the federal rule to which it corresponds, specifically provides that

> Where a counterclaim and the claim of the opposing party arise out of the same transaction or occurrence, the counterclaim shall not be barred by a statute of limitations notwithstanding that it was barred at the time the petition was filed, and the counterclaimant shall not be precluded from recovering an affirmative judgment.

Okla. Stat. tit. 12 § 2013(C).

This Court first questions whether the Erie doctrine requires the application of state procedural law to a challenge to a bankruptcy claim. In order to follow Plaintiffs' logic in the

9

counterclaim-by-analogy theory, the proof of claim is viewed as a "complaint," the objection to claim is viewed as an answer to the "complaint," and the state law legal malpractice claim is viewed as a "compulsory counterclaim." In re Continental Airlines, Inc., 928 F.2d 127, 129 (5th Cir. 1991). Under Plaintiffs' theory, the Federal Rules of Bankruptcy Procedure would not govern the objection to the proof of claim. Fed. R. Bankr. P. 3007. Rather, Oklahoma procedural law would govern both the objection to the claim and the counterclaim. This logic lacks legal foundation. The Federal Rules govern both the objection to claim and the "counterclaim-by-analogy."

Moreover, even if § 2013(C) could be found to apply to their legal malpractice "counterclaim," Plaintiffs' position must fail. That section only applies when the counterclaim "was barred at the time the petition was filed." Under Plaintiffs' theory, the "petition" equates with the proof of claim. The claim was filed on January 28, 2004. Clearly, the "counterclaim" or legal malpractice claim was not barred by the applicable statute of limitations at the time of the filing of the "petition" or proof of claim. Therefore, § 2013(C) has no applicability in any event to the facts of this case. *See also*, United States v. Hobbs, 921 P.2d 338, 342 (Okla. 1996).

This Court does not specifically rule upon the timeliness or

validity of Bonney's objection to Defendants' claims.  Any such objection, however, should be brought before the bankruptcy court rather than this Court.  Further, because this Court's ruling on the statute of limitations issue is dispositive of this case, the remaining argument proffered by Defendants concerning the doctrines of claim and/or issue preclusion, equitable estoppel and/or waiver will not be addressed.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed January 22, 2008 (Docket Entry #19) is hereby **GRANTED.**  Accordingly, this case is hereby **DISMISSED** for the reasons set forth in this Opinion and Order.

IT IS SO ORDERED this 30th day of September, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE